UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| BRANDON J. MEEKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 21-2110 |
| | ) | |
| DUSTIN HEUERMAN, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## SUMMARY JUDGMENT ORDER

Plaintiff, proceeding pro se and presently incarcerated at Robinson Correctional Center, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging constitutional claims arising from his confinement at the Champaign County Jail. The matter comes before this Court for ruling on the Defendants' Motion for Summary Judgment. (Doc. 49). The motion is granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

# FACTS

Plaintiff was confined at the Champaign County Jail ("jail") at its downtown Urbana location. Defendant Heuerman was the elected Champaign County Sheriff, Defendant Richler was a correctional sergeant, and Defendant Rosario was a correctional officer.

Champaign County previously housed detainees at a facility in downtown Urbana and a satellite location. According to a newspaper article dated October 8, 2019, the Champaign County Board voted to consolidate the two facilities after Defendant Heuerman described conditions at the "dilapidated" downtown location, including cockroaches in the lobby. (Doc. 52 at 11-13). Officials closed the downtown location in 2022. *Id.* at 31.

Between the date of the newspaper article and the facility's closure, officials contracted with a pest control company to provide monthly treatments at the downtown facility to control any pest or vermin issues at the times relevant to Plaintiff's complaint. (Doc. 49-5 at 2). The Physical Plant Division of Champaign County made maintenance workers available to the jail to address any plumbing issues that arose. *Id.* at 1-2. Inspections conducted by Illinois Department of Corrections' officials in 2019 and 2020 disclosed that the downtown jail was compliant with Illinois County Jail Standards. (Docs. 49-6 at 1-2; 49-7 at 1).

### Plaintiff's Slip-and-Fall

On November 27, 2020, at approximately 7:43 p.m., a detainee at the jail flushed multiple plastic bags down a toilet and caused water to back up from the floor drains in several cell blocks, including Plaintiff's. (Doc. 49-3 at 1). A video Defendants provided shows Plaintiff walk by the floor drain in his cell block and off camera shortly before a darkened area appeared around the drain and began expanding outwards while other detainees gestured towards it.

Video[1] 19:43:15-19:43:52. Plaintiff reappears on camera just before 7:44 p.m., walking quickly towards the puddle while looking backwards before he fell and remained on the floor. *Id.* 19:43:53-19:44:01.

Once made aware of the puddle and Plaintiff's fall, Defendant Rosario notified his supervisor who contacted the on-call maintenance worker and helped lockdown the affected cell blocks to avoid further injuries while his supervisor tried to find the nurse. (Doc. 49-3 at 1-2, ¶¶ 4-8. A nurse and two correctional officers arrive at the cellblock at 7:46 p.m. Video 19:46:11. The nurse provided pain medication and advised that Plaintiff did not require further medical treatment. (Doc. 49-3 at 2, ¶8); (Doc. 52 at 30) ("The nurse gave me medicine and said I'll be sore and fine."). Plaintiff later saw a doctor who prescribed Tylenol and recommended stretching. (Doc. 52 at 29).

Officials contacted a plumbing company that cleared the plastic bag from the jail's plumbing system sometime between 8:40 p.m. and 9:40 p.m. (Doc. 49-3 at 2-3, ¶ 10). Defendant Rosario cleaned the affected cell blocks shortly thereafter. *Id.* at 3, ¶ 11. Defendant Richler did not become aware of the issues until they had been resolved. (Doc. 49-4 at 1, ¶ 3). Defendant Heuerman played no role in these events.

## Cockroach Incident

Plaintiff filed a grievance dated December 7, 2020, stating that he had felt something crawl into his ear earlier that day, that two non-defendant correctional officers did not see anything in his ear and told him to submit a request for sick call, and that he had not been provided immediate medical treatment. (Doc. 49-9).

---

[1] A copy of the video was conventionally filed at the Rock Island Clerk's Office.

Defendant Richler received the grievance the same day. *Id.* He avers in his affidavit that Plaintiff was scheduled to see the nurse shortly thereafter, that he did not perceive Plaintiff's situation to be a medical emergency, and that he notified the nurse of Plaintiff's concerns. Plaintiff saw a nurse later that evening. (Doc. 49-4 at 2, ¶ 4); (Doc. 52 at 20). Another nurse removed part of an insect, approximately one centimeter long, from Plaintiff's ear the next day. *Id.* at 19. Medical staff did not indicate that Plaintiff needed additional treatment. Defendants Heuerman and Rosario were not involved in these events.

## ANALYSIS

The Court's Merit Review Order found that Plaintiff stated a Fourteenth Amendment claim for inhumane conditions of confinement against Defendants Heuerman, Rosario, and Richler, based on what appeared to be Plaintiff's status as a pretrial detainee. (Doc. 11). The record discloses that Plaintiff had been convicted and sentenced in his underlying criminal case on November 24, 2020. UMF 1; *People v. Meeks*, 2020 CF 1112 (Champaign Cty., Ill.).[2] Plaintiff's conviction changed the nature of his confinement for constitutional purposes, and, because he was a convicted prisoner at the time these events occurred, Plaintiff's claims arise under the Eighth Amendment. The parties recognized this issue, and they have briefed the pending summary judgment motion accordingly.

A prison official violates the Eighth Amendment if he or she denies a prisoner his or her basic human needs, but only if the official is aware of and deliberately indifferent to an objectively serious risk of harm. *Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir. 2008). The conditions at issue must be "sufficiently serious" such that "a prison official's act or omission result[ed] in the denial of the minimal civilized measure of life's necessities." *Farmer v.*

---

[2] Available at: www.champaigncircuitclerk.org (last accessed Sept. 11, 2023).

*Brennan*, 511 U.S. 825, 834 (1994). Only extreme deprivations, viewed in relation to contemporary standards of decency, make out a conditions-of-confinement claim. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Conditions that do not give rise to constitutional concerns on their own accord may nonetheless violate the Eighth Amendment if endured over a significant length of time, *see Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016), or where a multitude of conditions "have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Giles v. Godinez*, 914 F.3d 1040, 1052 (7th Cir. 2019) (citations omitted). Absent a specific deprivation of a single human need, "nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment." *Wilson v. Seiter*, 501 U.S. 294, 305 (1991). Prison conditions may be uncomfortable and harsh without violating the Constitution. *Dixon v. Godinez,* 114 F.3d 640, 642 (7th Cir. 1997).

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official's subjective awareness of a risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842.

**Plaintiff's Slip-and-Fall**

The puddle in Plaintiff's cellblock resulted from another inmate flushing items down a toilet, not from an issue inherent with the downtown jail's plumbing. Jail officials could not prevent the issue from recurring altogether, much less predict when it would happen, given the

number of readily available items typically found within a jail that, if flushed, would clog the plumbing system. To mitigate the risks involved, county officials made available maintenance workers who could fix the problem when it arose or call an outside vendor if necessary.

The puddle appeared within a short period of time, the video shows ample room to walk around it, and the other detainees' gestures permit only the inference that the puddle was readily observable had Plaintiff been looking forward when he walked towards it. Plaintiff was not wearing handcuffs or other restraints, and nothing in the record supports a reasonable inference that Defendants forced him to navigate this condition in a manner that increased the risk of harm it presented. *Compare Anderson v. Morrison*, 835 F.3d 681, 683 (7th Cir. 2016) (inmate forced to navigate stairs covered in milk and trash while handcuffed behind his back). Defendant Rosario promptly notified his supervisor, locked down the affected cell blocks, and facilitated Plaintiff's medical treatment once notified. The short timeframe in which these events occurred negates an inference that jail officials permitted a dangerous condition to persist for an unreasonable amount of time.

The record does not support a reasonable inference that jail officials acted with deliberate indifference either in addressing the recurring, but unpredictable, nature of the issue that caused the puddle or in their response to Plaintiff's situation. The Court finds that no reasonable juror could conclude that Defendants violated Plaintiff's constitutional right to humane conditions of confinement.

**Cockroach Incident**

Plaintiff offers the newspaper article from 2019 in support of his claims that the cockroach infestation at the downtown jail was so pervasive that it violated his constitutional rights. He does not point to any evidence refuting Defendants' contentions that they employed a

pest control company to control the pest population at the jail or that inspectors found the jail in compliance with all applicable standards, including sanitation, on two occasions spanning several years since the date of the article he provided. At best, the record discloses that one cockroach found its way into the jail and into Plaintiff's ear.

The record does not permit a reasonable inference that the jail had a cockroach problem, that Defendants knew about it, or that jail officials failed to respond to any issues that arose. Plaintiff received prompt medical attention. The Court finds that no reasonable juror could conclude that Defendants violated Plaintiff's constitutional rights.

**IT IS THEREFORE ORDERED:**

1) **Defendants' Motion for Summary Judgment [49] is GRANTED. The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions not addressed below are denied as moot, and this case is terminated. Plaintiff remains responsible for the $350.00 filing fee.**

2) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

Entered this 26th day of September, 2023.

*s/Sara Darrow*
SARA DARROW
CHIEF U.S. DISTRICT JUDGE